UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ORLANDO KING,

        Plaintiff,

v.                                                      Case No. 09-13641
                                                        Honorable Patrick J. Duggan

THE KROGER CO., KROGER
LIMITED PARTNERSHIP I,
KRGP, INC., and THE KROGER
CO. OF MICHIGAN,

        Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on March 9, 2011.

PRESENT:   THE HONORABLE PATRICK J. DUGGAN
U.S. DISTRICT COURT JUDGE

On August 7, 2009, Plaintiff Orlando King ("Plaintiff") filed a Complaint against

Defendants in the Circuit Court for Wayne County, Michigan, alleging race

discrimination in violation of Michigan's Elliot-Larsen Civil Rights Act[1] and Title VII of

the Civil Rights Act of 1964.[2]  Defendants removed Plaintiff's Complaint to this Court on

September 15, 2009, pursuant to 28 U.S.C. §§ 1331 and 1446.  The matter was assigned

---

[1]Michigan Compiled Laws §§ 37.2101-.2803.

[2]42 U.S.C. § 2000e.

to the Honorable John Feikens.  On June 1, 2010, Defendants filed a motion for summary

judgment pursuant to Federal Rule of Civil Procedure 56.  Plaintiff filed a response brief

on July 21, 2010; Defendants filed a reply brief on August 4, 2010.  The lawsuit was

reassigned to the undersigned on November 24, 2010; and on January 18, 2011, this

Court issued a notice informing the parties that it is dispensing with oral argument with

respect to Defendants' motion pursuant to Eastern District of Michigan Local Rule 7.1(f).

For the reasons that follow, the Court now grants Defendants' motion.

## I.      Summary Judgment Standard

Summary judgment pursuant to Federal Rule of Civil Procedure 56 is appropriate

if "the pleadings, the discovery and disclosure materials on file, and any affidavits show

that there is no genuine issue as to any material fact and that the movant is entitled to

judgment as a matter of law." Fed R. Civ. P. 56(c).  The central inquiry is "whether the

evidence presents a sufficient disagreement to require submission to a jury or whether it is

so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986).  After adequate time for

discovery and upon motion, Rule 56(c) mandates summary judgment against a party who

fails to establish the existence of an element essential to that party's case and on which

that party bears the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322,

106 S. Ct. 2548, 2552 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of

material fact." *Id.* at 323, 106 S. Ct. at 2553.  Once the movant meets this burden, the

"nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986) (quoting Fed. R. Civ. P. 56(e)). To demonstrate a genuine issue, the nonmoving party must present sufficient evidence upon which a jury could reasonably find for that party; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512. The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255, 106 S. Ct. at 2513.

## II.     Factual Background

Plaintiff, who is African-American, began working at The Kroger Company of Michigan as a part-time Courtesy Clerk (i.e. "bagger") on June 2, 2005.[3] Plaintiff was employed to work at Kroger Store No. 494. On May 14, 2006, the store manager at the time promoted Plaintiff to part-time Grocery Clerk. He continues to work in that position.

During his employment, Plaintiff was, and continues to be, a member of the United Food and Commercial Workers Union, Local No. 876 ("Union"). The terms and conditions of Plaintiff's employment are governed by a collective bargaining agreement

---

[3]Plaintiff concedes in his response brief that the only proper defendant is The Kroger Co. of Michigan. (Pl.'s Resp. Br. at 1.) This is the entity that employs the individuals working for Kroger in Michigan. (Defs.' Mot. Ex. B ¶ 1.) For this reason, the remaining defendants (i.e., Kroger Limited Partnership I, KRGP, Inc., and The Kroger Co.) are entitled to summary judgment in their favor.

3

("CBA") between The Kroger Co. of Michigan (hereafter "Kroger") and the Union.

Among other things, the CBA sets forth the manner in which work hours are distributed

among bargaining unit members.  Weekly work schedules are dictated by seniority (i.e.

the length of continuous employment with Kroger) within each department.  Part-time

employees cannot accumulate seniority over full-time employees.  Seniority also controls

the availability of additional work hours, including overtime.  As to part-time employees,

the CBA provides:

> Part-time employees shall be scheduled for available hours in each store, in
> accordance with seniority, job classification and demonstrated skill and
> ability to perform the work.  Such employees shall be scheduled for no less
> than twelve (12) hours per week, nor may they claim more than thirty-two
> (32) hours per week . . . In no event can part-time employees be scheduled
> or claim hours so that their total hours worked exceed thirty-two (32) hours
> . . . per week unless by mutual agreement by the Employer and the
> employee, and in accordance with store seniority.

(Defs.' Mot. Ex. C at 9-10.)

When he first began working as a Grocery Clerk, Plaintiff was working twenty

hours per week in that position; but he also was able to gain an additional twenty hours

per week working as a bagger because the store had a shortage of Courtesy Clerk

employees.  (Defs.' Mot. Ex. A at 55.)  Plaintiff's hours, however, were subsequently

reduced to twenty hours per week.   Plaintiff periodically requested additional work hours

during the course of his employment and he occasionally was able to work more than

twenty hours per week.

Plaintiff was offered extra hours working Courtesy Clerk shifts and doing a variety

4

of clean-up jobs throughout the store.  (*Id*. at 22-23, 50-51.)  The cleanup jobs included cleaning off the tops of the coolers and freezers, sweeping the floors, cleaning the floors in the shipping and receiving area, cleaning and removing garbage from the back of the store, removing old sticker prices from the shelves, and spraying to killing weeds in the sidewalk outside the store.  (*Id*. at 72-75.)  Plaintiff was paid at his higher Grocery Clerk rate when he performed these extra jobs.  (*Id*. at 51.)  He performed these jobs after he completed his regular four-hour Grocery Clerk shift, which was 5:00 a.m. to 9:00 a.m. four days a week.[4]

Plaintiff's managers offered to transfer him to other departments or to different shifts where he could work more hours.  Specifically, one store manager told Plaintiff that he did not have additional hours to give Plaintiff in the morning but that he could work more hours if he moved to an afternoon shift.  (*Id*. at 58.)  Plaintiff rejected the offer because he prefers to work in the mornings.  (*Id*. at 58-59.)  During a meeting with Union representatives, Plaintiff was offered the opportunity to become a cashier or work in the bakery department where more hours were available; however, he rejected the offer because he was afraid that he would not be able to do the jobs and would be fired.  (*Id*. at 55-56; Defs.' Mot. Ex. F.)

During his regular four-hour shift, Plaintiff's primary job assignment has been to clean and buff the floors.  This job entails sweeping the floors, using a cleaner and then

---

[4]If he works on a Thursday, when the store manager is off work, Plaintiff's hours are 6:00 a.m. to 10:00 a.m.

5

buffing the floors, and finally using a scraper to remove any gum and scuff marks.  It takes Plaintiff his entire four-hour shift to complete this job.  Before Plaintiff became a Grocery Clerk and on the days that he is not working (including periods when he was on medical leave), Steve Voydanoff, the store's Grocery Department Manager, cleans and buffs the floors.  (Defs.' Mot. Ex. A at 13-14, 47; Ex. B. ¶ 7.)  Voydanoff is a Caucasian employee.  (*Id*.) At Kroger's stores where there is no "floor care vendor", cleaning and buffing the floors is done by Grocery Clerks.  (*Id*. Ex. B ¶ 7.)  These individuals are African-American and Caucasian.  (*Id*.)

Two other individuals, Sean and Randy, have served as Grocery Clerks during the time that Plaintiff has worked in that position. Sean and Randy are both Caucasian; they are full-time employees.  During Plaintiff's morning shift, Sean and Randy are assigned to unload the trucks or do stocking.  Plaintiff identifies these duties, as opposed to those he is assigned to do, as those of a Grocery Clerk.

Kroger's Grocery Clerk Job Description lists a number of duties, including unloading trucks, stocking, taking trash to the dumpster, "sweeping and/or mopping spills, etc. . .," and "climbing a ladder . . . to hand signs, change light bulbs, etc..." (Defs.' Mot. Ex. D.)  The description provides, however, that "[t]he Grocery Clerk may be assigned to perform other tasks in addition to those [listed]."  (*Id*.)

## III.    Applicable Law and Analysis

Michigan's Elliot-Larsen Civil Rights Act ("ELCRA") and Title VII prohibit an employer from subjecting an employee to an adverse action based on the employee's

6

race. Mich. Comp. Laws § 37.2202; 42 U.S.C. § 2000e.  An employee may establish a claim of discrimination under these statutes by offering either direct or circumstantial evidence of discrimination.  *White v. Columbus Metro. Housing Auth.*, 424 F.3d 232, 238 (6th Cir. 2005) (Title VII);  *Sniecinski v. Blue Cross and Blue Shield of Mich.*, 469 Mich. 124, 132, 666 N.W.2d 186, 192 (2003) (ELCRA).  Plaintiff lacks direct evidence to show that he was subjected to an adverse action due to his race.  Thus Plaintiff must offer circumstantial evidence to prove his case.

When a plaintiff proves his case through circumstantial evidence, he begins by establishing a prima facie case of discrimination.  *DiCarlo v. Potter*, 358 F.3d 408, 414 (6th Cir. 2004) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53, 101 S. Ct. 1089 (1981)).  To make this showing, the plaintiff must establish the following: "(1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment decision; and (4) he was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008) (citations omitted). If the plaintiff establishes such a prima facie case, an inference or rebuttable presumption of discrimination arises.  *DiCarlo*, 358 F.3d at 414.

In order to rebut this inference, the employer must "articulate some legitimate, non-discriminatory reason" for its conduct.  *Id*.  If the employer articulates such a reason, "'the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a

7

pretext for discrimination.'"  *Id.* at 414-15 (quoting *Burdine*, 450 U.S. at 253, 101 S. Ct. at 1089).

Defendants argue that Plaintiff cannot establish a prima facie case of race discrimination because he cannot show that he was subjected to an adverse employment action.  The Sixth Circuit has provided the following description for identifying "an adverse employment action":

> [A] materially adverse change in the terms and conditions of employment must be more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

*Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir. 1999) (quoting *Crady v. Liberty Nat'l Bank & Trust Co. of Indiana*, 993 F.2d 132, 136 (7th Cir. 1993)).  An employee's responsibilities may be "different" without being "adverse."  *See Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 886 (6th Cir. 1996) (discussing *Crady*, where the plaintiff "had been transferred from one division of a bank to another, but simply failed to offer any proof that his responsibilities were any less significant even though they were different.")

In his response brief, Plaintiff claims that he was assigned "janitorial duties" or "diminished material responsibilities," which he claims are very different from the official duties of a Grocery Clerk and the duties assigned to the store's Caucasian Grocery Clerks.  Plaintiff also claims that Caucasian employees are allowed to use the business phone without asking permission whereas he is told that he cannot use the phone.

8

Plaintiff's primary job duty during his regular shift as a Grocery Clerk, however, is cleaning and buffing the floors.  The evidence establishes that this duty is part of the Grocery Clerk job description at stores where there is no floor care vendor, such as the store where Plaintiff works.  Thus Plaintiff is not being subjected to "significantly diminished material responsibilities," as he claims.  Moreover, the evidence establishes that a Caucasian employee, Grocery Department Manager Steve Voydanoff, performs this job when Plaintiff is not working. Further, Plaintiff testified at his deposition that he does not believe his race has anything to do with his perceived mistreatment.  (*See* Defs.' Mot. Ex. A at 37 ("Race don't have anything to do with it. . . . I don't feel race is in that, in that what I'm going through."))

The other cleaning jobs that Plaintiff has performed have not been assigned to him as part of his Grocery Clerk position.  Rather, Plaintiff has been offered the opportunity to performs these tasks to increase his work hours.[5]  He also has been offered the opportunity to work a different shift to accumulate more hours and to move to other departments; however, he has rejected these offers.

As to Plaintiff's claim that he is treated differently than Caucasian employees in

---

[5]In his response brief, Plaintiff argues that Defendants have not shown that extra hours are not offered to Caucasian part-time Grocery Clerks with less seniority than Plaintiff.  (Pl.'s Resp. Br. at 10.)  To the extent Plaintiff is claiming that part-time Grocery Clerks with less seniority than him are being offered extra hours, it is his burden to present proof to support his assertion.  *See White supra*.  Plaintiff offers no evidence to suggest that this is true.  Further, the evidence indicates that Plaintiff has been offered extra hours; however, he is unwilling to work the shift or in the departments where these additional hours are available.

regard to use of the business phone, even if his claim is true, it does not constitute an adverse employment action. An adverse employment action must be "materially adverse" and not simply an inconvenience. *See Hollins supra*.

In short, Plaintiff fails to present sufficient evidence upon which a jury could reasonably find that he suffered an adverse employment action. He therefore fails to show that he can establish a prima facie case of race discrimination to support his ELCRA and Title VII claims.

Accordingly,

**IT IS ORDERED**, that Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 is **GRANTED**.

s/PATRICK J. DUGGAN<br>
UNITED STATES DISTRICT JUDGE

Copies to:
Christopher S. Varjabedian, Esq.
S. Jenna Dabaja, Esq.
Terrence J. Miglio, Esq.
Ryan D. Bohannon, Esq.